**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FRANCES REMY,
individually, and on behalf of
all others similarly situated,

      Plaintiff,

v.                                                          Case No.:
                                                            CLASS ACTION
                                                            DEMAND FOR JURY TRIAL

PROFESSIONAL PARKING
MANAGEMENT
CORPORATION,
a Georgia corporation,

      Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff FRANCES REMY ("Remy") on behalf of herself and all others similarly situated, alleges the following based upon personal knowledge, upon information and belief, and the investigation of her undersigned counsel as to all other matters, and brings this class action against Defendant Professional Parking Management Corporation ("Defendant" or "PPM"), as follows:

1

## I.   NATURE OF THE ACTION

1.    This Complaint seeks redress for a class of vehicle owners who were unlawfully mailed parking citations by Defendant PPM, and whose personal information PPM illegally obtained through flagrant violations of federal law.

2.    PPM is a privately owned company that operates parking lots and garages throughout the United States.

3.    PPM's business model ostensibly involves charging drivers to park their vehicles in its facilities.  In reality, however, PPM's business is about mailing parking citations to vehicle owners and threatening them with severe consequences if they do not pay exorbitant sums demanded in these citations.

4.    The citations at issue are designed to look like official parking citations, despite being "issued" by a private company rather than an arm of government.

5.    PPM's citations illegally threaten to tow and "boot" vehicles if not paid, a legal right that belongs exclusively to the government.

6.     Worse yet, the citations are addressed using information PPM illegally

obtains from official motor vehicle records, in violation of the Driver's

Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*

7.     The DPPA requires PPM to receive the prior express written consent of all

consumers prior to PPM's invasion of their privacy. 18 U.S.C. § 2721(b)(13).

8.     PPM did not receive prior express written consent from Plaintiff nor any

Class Member prior to invading their privacy.

9.     Notably, PPM seeks to obtain the written consent of cited vehicle owners at

the time of payment, *well after* it has already violated federal law, by

requiring payors to agree to the "terms and conditions" on its payment

website:[1]

> **BY AGREEING TO THESE TERMS AND CONDITIONS, YOU HEREBY
> PROVIDE PROFESSIONAL PARKING MANAGEMENT
> CORPORATION WITH YOUR EXPRESS CONSENT TO OBTAIN YOUR
> NAME AND MAILING ADDRESS FROM THE STATE DEPARTMENT OF
> MOTOR VEHICLES PURSUANT TO 18 U.S.C. § 2721.**

10.    PPM knowingly, willfully, or recklessly obtained, disclosed, and/or used

Plaintiff and the Class Members' personal information for a purpose not

permitted by the DPPA. As a result, Plaintiff Remy seeks to represent a class

---

[1] *See* https://pkg-shared-
files.s3.amazonaws.com/brands/etico/docs/terms.pdf, p. 1-2.

of persons who were mailed such parking citations and whose personal information PPM illegally obtained in violation of the DPPA.

**A.    Introduction to the DPPA.**

11.    In 1994, Congress enacted the DPPA as a critical measure to protect the personal information of drivers in the United States. This federal law was designed to address growing concerns about the misuse of personal data collected by state departments of motor vehicles ("DMV"). By regulating the disclosure and use of personal information contained in motor vehicle records, the DPPA ensures that this sensitive data is only accessible for legitimate and specified purposes. The act's primary goal is to safeguard individuals' privacy and prevent the exploitation of their personal information for purposes such as solicitation, marketing, and identity theft.

12.    Historically, the DPPA was a response to several high-profile incidents where personal information obtained from DMV records was used for harmful purposes, including intimidation and harassment. The act was championed by Congress as a necessary step to enhance privacy protections in an increasingly data-driven society. Its passage marked a pivotal moment in the evolution of privacy law in the United States, setting a precedent for subsequent legislation aimed at protecting personal data.

13.    The effect of the DPPA has been profound, establishing a legal framework that mandates strict confidentiality and restricts access to motor vehicle records. Under the DPPA, personal information such as names, addresses, and Social Security numbers cannot be disclosed without the driver's written consent, except for certain permitted uses, such as law enforcement activities. The act imposes penalties for unauthorized access and misuse of this data, thereby deterring potential abusers and reinforcing the importance of data privacy. By providing a clear legal standard, the DPPA aims to reduce the risks associated with the widespread availability of driver information.

14.    Regrettably, there are still occasions where unscrupulous actors like PPM disregard the DPPA and abuse the personal information contained in DMV records for illicit purposes.  This is one such case.  PPM's entire business model is based on flouting the DPPA and abusing official motor vehicle data to harass, intimidate, deceive, distress, and ultimately defraud consumers. This action aims to stop PPM's unlawful conduct and compensate consumers whose privacy rights have been blatantly violated through impermissible access to their Personal Information.

## II.    JURISDICTION AND VENUE

15.    This Court has original subject matter jurisdiction over this action pursuant to 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331.

16.    This Court has personal jurisdiction over PPM because it is incorporated Georgia, operates its principal place of business at 3399 Peachtree Road NE, Suite 400, Atlanta, GA 30326, maintains its registered agent at 3490 Piedmont Road, Suite 400, Atlanta, GA, 30305, regularly transacts business within the State of Georgia, and has profited handsomely from the laws of the State of Georgia.

17.    Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c).

## III.    PARTIES

18.    Plaintiff FRANCES REMY is a natural person and resident of Broward County, Florida, and is a citizen of the State of Florida.

19.    PPM is a Georgia Domestic Profit Corporation with its principal place of business located in Fulton County, Georgia.

## IV. FACTS

**A.    PPM's Business Model**

17.    PPM is a Georgia corporation primarily managing and operating parking lots and garages owned by third parties throughout the United States.

6

18. PPM utilizes camera-based license plate detection and recognition technology to manage its parking lots and garages. This technology captures, stores and transmits images of the license plates on consumers' vehicles entering and exiting its parking facilities.

19. As a vehicle exits a PPM parking facility, it captures an image of the consumers' license plate and then utilizes those images to determine whether the parking fee had been paid by the consumer at the time of their departure. Once PPM determines that a fee is due, it then mails a document entitled "**PARKING CHARGE NOTICE – DO NOT IGNORE**" to the registered owner of the vehicle.

20. In order to mail this document, PPM must first identify the vehicle owner and obtain his or her name and mailing address.  PPM locates this information by consulting the official motor vehicle records of the State and searching for the vehicle owner using the license plate number.  PPM uses this illegally obtained information to issue the citation via mail.

21. PPM's "Parking Charge Notices" mirror government tickets, threaten to "boot" and tow consumers' vehicles for unpaid citations, [2] impose

---

[2] A legal right that is only available to the government or a third party hired by the government.

exorbitant penalties against vehicle owners, charge illegal service fees, and unlawfully threaten various consequences if they do not receive payment immediately. PPM also sets out tight deadlines by which the vehicle owner must remit payment to avoid even more onerous penalties. In consequence, the vehicle owner typically pays the sum demanded in the citation and has suffered an injury by way of PPM's invasion of their privacy.

**B.      PPM's Illegal Parking Citation to Plaintiff Remy**

22.    On April 14, 2024, Plaintiff Remy entered a private parking lot located at 111 SW 3rd Ave., Fort Lauderdale, FL 33312, which was operated or managed by PPM.

23.    At the time she entered the parking lot, there was no parking attendant or gate.

24.    Plaintiff Remy drove around the aforementioned parking lot for approximately 32 minutes looking for a parking space, but none were available, so she exited the parking lot without parking.

25.    Nevertheless, on or about April 18, 2024, PPM mailed Plaintiff Remy a citation ominously entitled "**PARKING CHARGE NOTICE – DO NOT IGNORE**." This citation stated that Plaintiff Remy owed PPM a "parking charge" of $90.00, "plus any applicable state sales tax and/or parking

surcharge." A true and correct reproduction of the aforementioned citation is attached hereto and incorporated herein as Exhibit A.

26.   PPM's illegal citation further stated that "if payment is made within 15 days of the Notice date, Professional Parking Management will reduce the amount you owe from $90.00 to $55.00 plus any applicable state sales tax and/or parking surcharge." *Id.*

27.   On the back of the citation, in bold, capital letters, PPM threatened Plaintiff Remy as follows: "**FAILURE TO PAY THIS PARKING CHARGE NOTICE MAY RESULT IN THIS MATTER BEING REFERRED TO COLLECTIONS ... UNPAID PARKING CHARGE NOTICES MAY RESULT IN THE VEHICLE BEING BOOTED OR TOWED AT THE OWNER'S EXPENSE."** *Id.*

28.   PPM injured Plaintiff when it invaded her right to privacy by unlawfully obtaining personal information about her from the State's motor vehicle database.

29.   PPM's invasion of privacy resulted in distress to Plaintiff.

30.   Moreover, PPM's statements asserting a legal right where none exists (PPM's false statement that it has the legal right to boot and tow consumers' vehicles for unpaid citations) caused emotional distress to Plaintiff.

C.     **Common Allegations DPPA**

31.     PPM's illegal citation to Plaintiff included a photograph of Plaintiff's license plate, taken by PPM's on-site camera equipment.

32.     Upon information and belief, once PPM captured Plaintiff's license plate number, it then unlawfully queried official Florida motor vehicle records to identify Plaintiff and acquire her sensitive personal information without her written consent, including her home address.  PPM then mailed its illegal citation to Plaintiff.

33.     PPM did not receive Plaintiff Remy's express written consent prior to accessing her personal information as required by the DPPA, 18 U.S.C. § 2721(b)(12).

34.     Plaintiff Remy has never waived her right to privacy under 18 U.S.C. § 2721(d).

35.     Upon information and belief, PPM utilized these or similar methods to send its illegal citations and collect money from the putative Class Members who entered parking garages or lots managed or operated by PPM throughout Florida and the United States.

36.     The DPPA governs the manner by which certain personal information can be accessed or disclosed, and imposes penalties for violation of its provisions.

37.     Section 2724(a) of the DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains ..."

38.     PPM is a "person" within the meaning of 18 U.S.C. 2725(2).

39.     PPM accessed Plaintiff's "Personal Information" as defined in the DPPA to mean "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C. § 2725.

40.     A "motor vehicle record" is defined in the DPPA to mean "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles…" *Id.*

41.    DPPA Section 2721(b) provides a set of "permissible uses" of personal information. The permissible use exemptions to the DPPA allow the use of such information for a limited number of purposes designed to promote public welfare.

42.    PPM's use of official motor vehicle records to send parking citations to Plaintiff and the Class is not a permissible use of such information under the DPPA.

43.    PPM's conduct as set forth above caused harm to Plaintiff and the Class Members by violating their statutory rights, invading their privacy, intrusion upon seclusion, harassment and annoyance.

44.    Accordingly, Plaintiff has standing to bring her claims under the DPPA. *See Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022) ("At bottom, the DPPA is aimed squarely at 'the right of the plaintiff, in the phrase coined by Judge Cooley, 'to be let alone.''") (quoting William L. Prosser, Privacy, 48 Calif. L. Rev. 383, 389 (1960)).

## V.    Class Action Allegations

45.    Plaintiff brings this case as a class action on behalf of herself and all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3).    The proposed Class (the "DPPA Class"    referred

12

throughout as the "Class") is defined as follows:

## DPPA Class

All natural persons in the United States whose Personal Information, as defined by the DPPA, was obtained by PPM from the person's motor vehicle record in the four years preceding the filing of the Complaint, through the date of any order granting certification of the class.

46.   Expressly excluded from the Class are:

(a)   Any Judge or Magistrate Judge presiding over this action and members of their immediate families;

(b)   PPM and any entity in which PPM has a controlling interest, or which has a controlling interest in PPM and its legal representatives, assigns and successors; and

(c)   All persons who properly execute and file a timely request for exclusion from the Class.

47.   Plaintiff reserves the right to amend the Class definition at the Class Certification stage of the litigation if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

## Fed. R. Civ. P. 23(a) Criteria

48.   Numerosity. The exact number of Class Members is unknown as such

information is in the exclusive control of PPM. However, due to the nature of the trade and commerce involved, and the size of PPM's business, Plaintiff reasonably believes the Class consists of easily thousands of consumers, geographically dispersed throughout the United States, making joinder of all Class members impracticable. Class members are ascertainable from a review of PPM's business records.

49.     Commonality. Common questions of law and fact affect the right of each Class Member and common relief by way of damages is sought for Plaintiff and Class Members. The harm that PPM has caused or could cause is substantially uniform with respect to Class members. PPM either violated the DPPA for all Class Members or none. Common questions of law and fact that affect Plaintiff and the Class Members include, but are not limited to:

(a)     Whether PPM's parking citation is standard and uniform in all relevant aspects for Plaintiff and the Class and materially similar to PPM's citation contained in Exhibit A;

(b)     Whether PPM obtained the express written consent of Plaintiff and the Class prior to accessing their Personal Information;

(c)     Whether PPM had any permissible purpose within the meaning of the DPPA when it obtained the Personal

Information of Plaintiff and the Class;

(d)     Whether PPM invaded the privacy of Plaintiff and the Class
when it illegally obtained their Personal Information;

(e)     Whether PPM used the illegally obtained Personal Information
to mail its parking citations to Plaintiff and the Class;

(f)     Whether PPM obtained, disclosed, or used the Personal
Information of Plaintiff and the Class in violation of the DPPA
and are therefore liable to Plaintiff and the Class;

(g)     Whether PPM's systematic conduct was willful or in reckless
disregard of the law, warranting the award of punitive
damages against PPM and in favor of Plaintiff and the Class, as
provided by the DPPA;

(h)     The appropriate equitable and damage remedies that should be
awarded to Plaintiff and the Class as a result of PPM's conduct;
and

(i)     Whether Plaintiff and the members of the Class have sustained
damages and, if so, the proper measure of such damages.

50.     Typicality. The claims and defenses of Plaintiff is typical of the claims and
defenses of the Class because PPM knowingly invaded their privacy by

15

accessing their personal information without their prior express consent, and PPM mailed each of them an illegal parking citation. There is nothing peculiar about Plaintiff' claims. Indeed, Plaintiff's claims are typical of the claims of other members of the Class. Plaintiff resides in Broward County, Florida and will knowingly or unknowingly likely be required to use or will encounter PPM's parking lots or garages in the future. Plaintiff is uncertain of her rights and obligations when she has no other practical choice but to park in lots that may be managed or operated by PPM.

51.    Adequacy of Representation. Plaintiff will fairly and adequately assert and protect the interests of the Class.  First, Plaintiff has hired attorneys who are experienced in prosecuting class action claims within the State of Georgia and across the United States, and who will adequately represent the interests of the Class.  Second, Plaintiff has no conflict of interest that will interfere with the maintenance of this class action as her claims are the same as the Class Members she seeks to represent. Further, Plaintiff understands her obligations to the Class, is committed to vigorously litigating this matter, and will fairly and adequately protect and represent the interests of the Class.

## Rule 23 (b)(3) Criteria

52.     The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. A class action provides a fair and efficient method for the adjudication of this controversy for these reasons and is superior to the alternative methods involved in individual litigation.

53.     Although the Class is numerous enough to meet the numerosity requirement, the proposed Class does not create manageability problems because the claims turn on common legal determinations.  Either PPM's citations are illegal or they are not. Either PPM lawfully accessed Plaintiff and Class Members' Personal Information or it did not. Either PPM received Plaintiff and the Class Members' prior express written consent or not. There are no unusual legal or factual issues that would create manageability problems as the issues turn on interpretation of PPM's parking citations, means and purpose of collecting information enabling them to send such citations, and their standard practice of accessing State motor vehicle records.

54.     Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against PPM when

confronted with incompatible standards of conduct.

55.     Despite the sizeable sum of money unlawfully collected and retained by

        PPM, the claims of the individual Class members are, nevertheless, small in

        relation to the expenses of individual litigation, making a class action the

        only procedural method of redress in which Class members can, as a

        practical matter, recover their damages and stop the illegal practices at issue.

56.     Class members are readily identifiable and ascertainable given the nature of

        PPM's business practices and using their business records.

### VI.     CAUSES OF ACTION

### COUNT I
**Violation of the Driver's Privacy Protection Act**
**18 U.S.C. § 2721, *et seq.***
**(DPPA Class)**

57.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1-56,

        as if set forth fully herein.

58.     PPM is a "Person" as defined in 18 U.S.C. § 2725(2).

59.     PPM invaded the privacy of Plaintiff and the Class by seeking their

        "Personal Information" as defined in 18 U.S.C. § 2725(3).

60.     Prior to seeking Plaintiff and the Class Members' Personal Information,

        PPM never received express written consent as defined in 18 U.S.C. §

        2725(5).

61. The DPPA, 18 U.S.C. § 2722 makes it "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under Section 2721(b)" of the DPPA.

62. The DPPA, 18 U.S.C. § 2724(a) provides that a "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains…"

63. PPM knowingly obtained, disclosed and used Plaintiff's Personal Information obtained from a State motor vehicle record in order to mail her its illegal parking citation, which is not a permissible purpose under the DPPA.

64. PPM willfully obtained Plaintiff and the Class Members information without their prior express written consent in reckless disregard of the DPPA.

65. As a result of PPM's conduct and invasion of privacy, Plaintiff and the Class have suffered harm, and are entitled to recover the damages available under the DPPA, plus costs and attorneys' fees, as provided under the DPPA, 18 U.S.C. § 2724(b).

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment

in her favor and in favor of the Class, and against Defendant Professional Parking Management Corporation, as follows:

(a)   an order certifying this case to proceed as a class action, designating Plaintiff as the Class representative, and designating the undersigned as Class Counsel;

(b)   actual damages not less than liquidated damages in the amount of $2,500;

(c)   punitive damages upon proof of willful or reckless disregard of the law;

(d)   an order permanently enjoining PPM from further violating the DPPA;

(e)   reasonable attorneys' fees and costs; and

(f)   Such further relief as this Court may deem appropriate.

## **Jury Demand**

Plaintiff hereby demands a trial by jury on all issues so triable.

## **L.R. 5.1 Certification**

Plaintiff's counsel hereby certifies that this Complaint has been prepared using a font and point selection that complies with Local Rule 5.1(B).

Dated: June 19, 2024             Respectfully submitted,

**SKAAR & FEAGLE, LLP**

by:      /s/ Justin T. Holcombe
         Justin T. Holcombe
         Georgia Bar No. 552100
         jholcombe@skaarandfeagle.com
         Kris Skaar
         Georgia Bar No. 649610
         kskaar@skaarandfeagle.com
         133 Mirramont Lake Drive
         Woodstock, GA  30189
         770 / 427-5600
         404 / 601-1855 fax

         James M. Feagle
         Georgia Bar No. 256916
         jfeagle@skaarandfeagle.com
         Cliff R. Dorsen
         Georgia Bar No. 149254
         cdorsen@skaarandfeagle.com
         2374 Main Street,   Suite B
         Tucker, GA 30084
         404 / 373-1970
         404 / 601-1855 fax

         **SCOTT D. OWENS, P.A.**
         Scott D. Owens, Esq., FBN: 597651*
         2750 N. 29TH AVE., SUITE 209A
         HOLLYWOOD, FLORIDA 33020
         TELEPHONE:  (954) 589-0588
         scott@scottdowens.com

**BRET LUSSKIN, P.A.**
Bret L. Lusskin, Jr., Esq.; FBN: 28069*
1025 E. Hallandale Beach Blvd., Ste 1532
Hallandale Beach, FL 33009
Tel: (954) 454-5841 / Fax: (954) 454-5844
blusskin@lusskinlaw.com

**VARNELL & WARWICK, P.A.**
Janet R. Varnell; FBN: 0071072*
Brian W. Warwick; FBN: 0605573*
Christopher J. Brochu; FBN: 1013897*
Pamela G. Levinson, FBN: 538345*
Jeffrey L. Newsome; FBN: 1018667*
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*cbrochu@vandwlaw.com*
plevinson@vandwlaw.com
*jnewsome@vandwlaw.com*
*ckoerner@vandwlaw.com*

 * Pro Hac Vice Application Forthcoming
*Attorneys for Plaintiff and the Proposed Class*